Good morning. May it please the court. My name is Zachary Nightingale. I'm counsel for Ambika Miki on behalf of Mr. Abebe, petitioner. The Blake and Braver interpretations at issue here are invalid for the three reasons suggested in the court's questions. They're an inconsistent interpretation of the statute, which, through amendment in 90 and 96, has acknowledged 212C eligibility for those deportable for aggravated felonies. In addition, those interpretations violate equal protection and basic retroactivity principles. I'd like to turn to the retroactivity argument, which is number three first. There are two retroactivity principles at issue here. To the extent that the regulations are understood to change the rule under concomitant, this court's decision is an impermissibly retroactive application. To the extent that it's the Blake and Braver interpretation of those regulations that changed the rule, that's impermissible under Montgomery Ward, this court's decision on those five factors. So I'll take those two in turn. If I may, it seems sort of a backwards place to start, because first we have to establish that, in fact, there's been a change. And that really is what's in the most controversy, it seems to me. Okay. So before Blake and Braver, no court had ever directly addressed the question of whether an aggravated felony or an aggravated felony subsection conviction is barred from 212C. The prior case law from the board was basically all over the map. There's one line of cases from the board where they applied this statutory counterpart rule, which from what I can tell comes from Wadood, which had no constitutional analysis whatsoever. But there were several cases that did apply the rule. Isn't that correct? There are several cases that apply the rule, none of them until Blake and Braver in the aggravated felony context. They were in the context of other grounds of deportation that were clearly distinct from inadmissibility, such as the firearms, such as entry without inspection, and the document fraud. In each of those cases, the statutory counterpart analysis clearly mirrored the original legal protection analysis from which it came, because the classes are distinct. How about Comoronco? How about Comoronco? Now, in Comoronco, the issue was a firearm offense that could have been a moral turpitude offense. The court says on that question it's speculative, and they declined to reach it. But we accepted a grounds-based test for equal protections in Comoronco, and isn't that the law of the circuit? They accepted a grounds-based test basically for the firearm analysis. Well, because if you do the firearms, you know, the holding of the case appears to be that we're dealing with grounds-based tests for equal protection. Well, they never said it's good enough for equal protection because they noted that there was a possible overlap, but they said for policy reasons we're not going to speculate on that overlap. I think Comoronco really was focusing on the equal protection problem, wasn't it? Well, the thing is there's a difference today. Part of the reason they didn't speculate is because returning lawful permanent residents generally weren't subject to any disability, so what would happen to them was more speculative. Today, 101A13 changed that, and 101A13 says returning lawful permanent residents with a conviction are applicants for admission. So there's no longer a speculative nature of what happens to returning lawful permanent residents. That's a key difference. I don't understand. You have to bear with us because this is terribly complicated. Yeah. And I've been spinning out scenarios in my head all weekend. As I understand it, then and now, somebody who showed up at the border with a firearms conviction could have been denied admission, if it were the right kind of a firearms conviction on a crime of moral interpretation. If it's also a crime of moral interpretation. Right. So how is that different? I understand or let me make a posit that the only way this could be different, and maybe this is where you're going, is because of something coming out of the addition in 1990 of the five-year aggravated felony limitation to 212C. Otherwise, why else would an aggravated felony be different? And that's one possibility. The second possibility is that murder is so clearly a crime of moral interpretation always, but that would only be a case-specific answer. It wouldn't be an answer to Blake in general. On the second point, just quickly, of course, there are murder cases where the board specifically found 212C eligibility in the 90s, matter of AA and matter of Rodriguez-Cortez. But given what you said, there's other Ninth Circuit cases like Leon Paz and Ubaldo Figueroa, where this court on crime of violence and burglary issues clearly found that in the 90s, they would have been, in the late 90s, they would have been 212C eligible. Who would have been 212C? I'm sorry. Who would have been 212C eligible? The individuals in Leon Paz and Ubaldo were lawful permanent residents with conviction. But nobody was really thinking about the problem, but they assumed it. Right. Okay. So actually the difference I'm pointing to is not the 19, back to the first part of your question, not the 1990 amendment, but the 96 amendment. One of the amendments made in 96 said that returning lawful permanent residents are now subject to the grounds of inadmissibility, whereas before 96, returning lawful permanent residents generally were not subject. Why does that matter? I'm missing something. Because that's, I believe, part of the reason that the Comerenco Court found it, quote, speculative. It was speculative because some of them, because not all crimes of moral turpitude, not all firearms crimes were crimes of moral turpitude and vice versa, and they didn't want to get into a fact-specific thing. Nobody said anything about whether, because there was something applicable at a border. What's the question? What's the difference? What was applicable at the border? Oh, because Mr. Comerenco, even assuming it was moral turpitude also, wouldn't have been subject to admissibility at the border. Well, it's appropriate for us to make hypothetical considerations about what an alien would have been charged with upon entering the country if there's no grounds that substantially use identical language in deporting the individual. Well, the immigration courts are constantly – I mean, do we have to engage in that hypothetical? The immigration courts engage in that hypothetical all the time. The immigration courts are constantly asked, is a given individual deportable or admissible, even if it's not the actual charge from DHS in that case? So immigration judges do all the time look to see, would the person be subject to admissibility for this conviction? But is it right for us to make that hypothetical consideration? Now it is. Now it is. Because the practice is returning lawful permanent residence if they are inadmissible are charged with grounds of inadmissibility today. The Collado decision from the BIA affirmed that since 96, the law is different on that. Before 96, that was very hypothetical. Just a minute. So where did the whole Francis problem come from to begin with? I thought the whole Francis problem came up exactly because LPRs who are otherwise eligible for 212C, if they were at the border, would be subject to admissibility conditions, whereas if they were not at the border, would not. That's right. What do you mean when you say that they weren't subject to admissibility considerations? Well, in general, they were not. Some were. The standard at the time was brief, casual, and innocent departure. So if a departure was other than brief, casual, and innocent, as, for example, in the Francis case it might have been, then there was admissibility. But that, I think, is what the Ninth Circuit in Comerenco was getting at, is too speculative. There's too much factual question there under pre-96 law. There's nothing in the opinion that suggests that. I mean, it seems to me you have to do something else with Comerenco, because there's nothing in the opinion that suggests that it was thinking of anything but the Francis situation. They were assuming that there was going to be an admissibility determination made at the border. You may know better than them, and you may know that maybe there wasn't going to be one, but this whole set of law is standing on the assumption that there's going to be an admissibility determination made at the border. Well, with all due respect, my understanding of Comerenco is they say Mr. Comerenco could have been an admissible. That's a factual question that we're not going to speculate on. The reason I say that the factual question is, number one, is the conviction such of moral turpitude, that's unclear rule. Actually, the case that came after Comerenco called Carr, C-A-R-R, cited Comerenco and said assault with a firearm is not moral turpitude. So there seemed to be a question of whether it was moral turpitude in the first place. Second of all, the reason I think they called it the factual inquiry is exactly because a departure would have to be brief, casual, and innocent at that time, under the law at that time, in order to trigger an admissibility. And the Comerenco court thought this is too detailed for us to really do a true equal protection analysis, because that would have been the question. In Francis, the issue was an individual who had traveled and came back and got the waiver, versus an individual who traveled, came back without a problem, picked up later, and then got the waiver non pro tunk. The board had already said those two people are equivalent. So the Francis equivalence was actually the person who traveled, came back, got the waiver later, and the person who never traveled and got the waiver. And that's the equal protection that Francis was actually looking at, because the board had already said it. Well, that's true, and it may be for that reason that Comerenco missed that and was looking at comparing the wrong two groups. But it did it. It did whatever it did. Well, it halfway did it, because it said this is too speculative, and so we're going to stop. Like they never took that next step. And my position is that because 101A.13 now says returning lawful permanent residents with those convictions are an admissible period, and Collado is the board's interpretation of that that affirmed that change, then there really is a different analysis than what would have been required at Comerenco's time. The speculative analysis that Comerenco court didn't want to engage in isn't speculative anymore. Let me ask you about Blake. If Blake stands with us, are any aliens who are deportable for having committed crimes of aggravated felony entitled to 212C relief? Well, Blake and Brava addressed the subsections of sexual abuse of a minor and crimes of violence. I don't believe any other board decision has addressed the 18 or so other subsections of aggravated felony. So at the moment, except for drug trafficking, which is already clearly eligible under MESA, it's unresolved on the other subsections of aggravated felony, because the board itself hasn't addressed that, and this Court may not reach that. If your theory about Comerenco, you began by saying that the cases that have used the grounds reason in pre-Blake and Brava and the regulation were not aggravated felony cases, and that was all the difference. And then you began with Comerenco to come up with a different difference, i.e., the 1996 statute, which if you write about, then it would apply to everything, not just to aggravated felony. So are you arguing that aggravated felonies are special in some way or not? I didn't think it was necessary to take on the very established case law regarding firearms, because unlike aggravated felonies, firearms are a very specific subclass. I mean, that's sort of standing there staring us in the face. If we wanted to rethink the whole situation, we have Comerenco. I should explain it. The first place I'm coming from is this is all equal protection law, that absent the equal protection problem, the rest of it is kind of spinach. The only reason we're here, we're in the place we are as equal protection, and I, therefore, don't think the agency's views are terribly important because it's an equal protection case. All right. If that's the case, Comerenco is an equal protection case, and it says something, and it's in our circuit. And if we can't – whatever we might think of as equal protection analysis, it's there. Okay. So, therefore, I don't see how – unless you can tell me why it doesn't apply to aggravated felonies, then your distinction of it applies to everything, and it either works or doesn't. So then two things on that. First, the – there's a very large overlap between aggravated felonies and moral turpitude that doesn't exist with firearms. And certainly all of the petitioners here are clearly – Well, some aggravated felonies. I mean, the list of aggravated felonies includes all kinds of things. Right. Things that don't seem very aggravated at all and aren't felonies. So the other – the other important point is, is the 1990 amendments, because Congress clearly understood by barring some aggravated felony convictions from the waiver that aggravated felony convictions would be included in the waiver. Otherwise, that amendment saying barred for five years has no meaning. So – Well, that's certainly true, but there are two possibilities there. One of them is that they meant to apply an aggravated felony override even to exclusion, even to admissions issues. Everybody seems to be assuming they weren't, but in fact – Well, they never made aggravated felony a ground of admission. That's right. They could have, but they didn't. Right. But they still appear to have made it a ground for not getting 212C relief. Only if you served five years. So people who didn't serve five years could still get it. Right. But what I'm saying is that it isn't necessarily applicable to deportations at all. However, the legislative history seems to recognize that the statute was being applied to deportations. So it seems to be applicable to some deportations. It was known at the time that was the intention. But where does that get you? We know it's applicable to some deportations. So it's not a nullity, so why isn't that the end of it? So because the question is, did Congress understand that 212C would be available to some aggravated felony convictions? Even knowing the history of denying 212C to firearms offenses, Congress understood that it would be available to people with aggravated felonies. So Congress could have been well aware. We're not in disagreement with a line of cases that say firearms are different. And because Congress specifically didn't create an admissibility for firearms, it's distinct. Aggravated felony, on the other hand, was a congressionally created term. And it was constantly changing. So Congress acknowledged that the aggravated felony concept isn't one that, you know, automatically ineligible for 212C, only if you serve five years, since aggravated felony includes all sorts of different offenses. I didn't say at the beginning, but I assume you know that you have to reserve your time if you want to reserve it. Okay. Thank you. Does the last sentence of 212C still have – what meaning does it have? It has meaning in that people who would be 212C eligible and convictions between 90 and 96 and serve five years in jail are not eligible for that group under the regs that are still eligible. But you're assuming it also means the opposite, that if they are eligible for 212C really – that if they are aggravated felons and weren't five years, then they aren't automatically eligible, regardless of any other – As long as it's not a firearm offense. As long as – yeah. As long as it's not a firearm offense. I would like to reserve my time. Thank you. Thank you. Good morning, Your Honors. Judge Berzon, Judge Nelson, it's nice to see you again. Judge Cowan, good morning. I'm John Cunningham from the Department of Justice, appearing on behalf of the Attorney General. May it please the Court. The Court has been beset with large piles of paper in these last several years. In these cases, big, thick briefs from the petitioners, big, thick briefs from us, and a particularly big, thick brief from the amici. So I'm going to try to speak in broad strokes. I'm going to try to boil our arguments down to their essence. Of course, I'll address the issues posed by the Court in its order, and I'll try to answer any questions you have. But I am going to try to keep this as simple as I can. I may fail, but I'm going to try. The Court first asked whether the statutory counterpart standard, as it appears on the regulation and as it was applied by the Board in Blake and Brieva, is a reasonable construction of the Immigration Act. Of course, the provision we're talking about is Section 212C. And my answer is, yes, of course it is. And the reason is, as we emphasize in our brief, throughout its life, and of course Section 212C hasn't been on the statute books of the United States now for nearly 10 years. So it's sort of irrelevant. I mean, we may have asked the question, but it's kind of an irrelevant question. Because, as I said before, it seems to me this is an equal protection case. Or it's a statutory interpretation in light of an equal protection problem. In either instance, the agency doesn't get much deference, and we're kind of all in the same boat. Oh, I agree, Your Honor. There's no question of agency deference here. If the Court would like, I'll just skip directly to the equal protection argument. That would make no difference. I actually didn't understand the briefs, because they were acting as if there was some independent legal issue here. I mean, statutory issue, and I really don't see it. No, you're right. There isn't. And the reason why there isn't is because Section 212C throughout its life only applied to aliens in exclusion proceedings. It only gave the Attorney General authority to waive grounds of exclusion. It was a grant of authority to him, but it was also a limitation. From your point of view, that's a good thing and a bad thing. It's a good thing because there has to be a equal protection problem, but it's a bad thing because you don't get deference. That's right. That's right. The equal protections ramification of an alien being charged with a grant of deportation, that was inevitably in every occasion also a crime of moral turpitude. The Court, the Board and this Court have addressed that argument, Your Honor, and they have seen it for what it is, which is an argument that the worse my crime, the more eligible I am for Section 212C relief. In other words ---- Well, that may be true, but that's because this whole thing is standing on this very, this perception that the equal, the Francis Tapia equal protection problem is not a comparison between two, the group of excluded aliens and the group of deported aliens. It's a comparison between a group of deported aliens who were at the border and a group of deported aliens who weren't at the border. And if you look at it that way, there seems to be no doubt with regard to Ledesma in particular that if he were at the border, he could have come in. And then the oddity is, as I understand and you can confirm this, at that point, once he gets in, he cannot then be deported for the other reason. Is that right? The ----  I ---- Your Honor, if he's at the border. Let's suppose Mr. Ledesma had left sometime in the interim. I'm sorry, I couldn't quite hear you. Let's suppose that, or Mr. Abebe, I'm sorry, Mr. Abebe had left sometime in the meanwhile, okay? And he comes to the border and they say, oh, you had a sexual abuse as a minor. Right. And that's a crime of moral turpitude because they're almost surely going to say that. Yes. And therefore, you are excludable, but you can apply for a waiver, okay? He applies for a waiver. Let's say he gets the waiver, right? Once he's in, I gather, and I don't quite know why this is, but I gather that you can't then turn around and deport him for having committed an aggravated felony. I think that's right, Your Honor. So that means that that is offense-based. The whole system is offense-based. It's not ground-based because if it were ground-based, you could then turn around and deport him on the aggravated felony ground, but you can't. I think, Your Honor, you do have to go back to Francis because that's the source pond here. Right. And in Francis there was no doubt that the alien was subject to deportation for possession of marijuana that had a very clear analog in the grounds for an admissibility. That was the basis for the Francis result. I understand that, but I'm asking you something very specific. Does the analog rule apply with regard to the consequences of 212C if the waiver is granted at the border? I think it does not. Well, Your Honor, then you are, you have, if that is the result. Is that true, first of all, in terms of what the board law is? I'm not sure, Your Honor. I cannot give you a clear answer to your question. I'm not sure. Is that critical? Well, it is true, according to what we see here, that is there an equal protections problem if the only distinction between an alien is whether he is being deported or excluded? In other words, the only difference is whether or not the alien has traveled. Is there an equal protection? And we treat them differently depending upon whether he's traveled abroad. Does that make it an equal protections offense? I would urge you, Judge Cowen, no, it doesn't, because, again, we are talking about a statute that only applied in exclusion proceedings. Forget about the statute. We have two aliens. They've committed the same criminal offense. One travels abroad, the other does not. One can be booted out of the country, the other can't. Instantly, they're not similarly situated. Instantly, they come under different regimes under the Immigration Act. Instantly, they have different legal grounds that they have to be concerned about. That may be, but that's not Francis. That's not Tapia. It's not Silva. It's not what the world has said. It's not what the Supreme Court was assuming in St. Cyr. Right? I mean, in other words, the world has gone on since then. St. Cyr is not a constitutional decision, Your Honor. I understand that, but St. Cyr, and this, I must say, is pretty serious to me, was assuming that this was all a very big deal, and it was certainly assuming quite explicitly that this, that 212C applied in deportation to all or most aggravated felonies. So if you're right, I mean, St. Cyr has now become a piggly from being a giant, at least. Yes. I mean, I think that's probably a fair description. If we're talking about the aggravated felony phenomenon, the argument you're getting from the amici particularly and from the petitioners is that the expanded definition of aggravated felony in ARERA has changed everything and requires a whole new approach to this area, that this Court's decision in Komarenko, the Court's decision in Kavusog, all the board decisions prior to 1996 are now irrelevant, that we're in a new world where aliens who plead guilty in, say, 1992, 1993, to crimes that weren't aggravated felonies at the time they entered their plea, are now facing deportation because ARERA retroactively defines them as aggravated felons. Well, we presumably could narrow that field to instances like the ones here, the sexual abuse of the minor and the murder, both of which at least have pretty close to 100 percent overlap in one direction, although not the other. Yes, but you confronted that argument in Komarenko and rejected it. No, that's not true, because in Komarenko you didn't have 100 percent or even close to it. In fact, as it turned out, many of the firearms crimes were not crimes of moral torture. I agree, Your Honor, with respect to the specific crime, but you saw in Komarenko the thrust of that argument, which is the worse my crime is, the greater entitlement I have to Section 212C relief, and the Court declined, and it did the same thing in Kavusog, to impose or to infer that kind of intent to Congress. Well, we accepted a grounds-based test for equal protections in Komarenko. Yes, you did. And we urge you to do the same thing now. Nothing's changed with respect to Section 212C. I mean, I flinched when someone said, forget about the statute. Well, we have the statute. That's the only – that's the underpinning of these cases. And if you grant the relief that the Petitioners, and particularly Amici, want in these cases, you will have severed relief under Section 212C completely from the language of the statute. So in order to agree with you, we have to agree with the Supreme Court was just really confused in saying Sear. I'll show you. Well, because it says, for example, the extension of 212C relief to the deportation context has had great practical importance, because deportable offenses have historically been defined broadly. And then they go on with the history, and then they say that the 19 – that aggravated felony was then added to include numerous offenses without regard to how long ago they were committed. Thus, the class of aliens whose continued residence in this country has depended on their eligibility for 212C relief is extremely large. And not surprisingly, a substantial percentage of their applications for 212C relief have been granted. But you're now saying that, in fact, it's not large at all. It's basically drug – at least as for aggravated felonies, it's drug dealers and nobody else – drug traffickers, and that's it. What I'm saying, I think, Your Honor, is that it doesn't matter how large it is. You're still talking about an equal protection analysis. St. Sear doesn't change that one bit. And to argue, as the petitioners and amici do, that the retroactive application of the ARERA amendments, which this Court has already considered a couple of times in Aragon, Aon, and again in court, hasn't found no due process problem and no statutory interpretation problem, that somehow changed the world so that now we have to have an entirely new equal protection issue. There's no ground for that. There's absolutely no precedent for that. And it would make – it would make an extraordinarily large class of aliens eligible for Section 212C relief. And here's an important point, Your Honor, if I may. We know, it's accepted now, that cancellation of removal, which is the post-1997 remedy, the successor to Section 212C, bars completely aggravated felons, lawful permanent residents, from getting cancellation of removal. So what the result that's being urged upon you now would do would be to create two classes of aliens, post-1997 aliens, who could not get cancellation of removals, that there's a flat bar in the statute to getting cancellation of removals if you're an aggravated felony, but a privileged class of aliens who happen to enter their pleas before the ARERA amendments took effect. They, according to this argument, especially being made by the amici, would be eligible for Section 212C relief. We don't see how that is a rational classification at all. Wait, just a minute. The Supreme – that's what the Supreme Court brought by St. Cyr. I mean, whether you're right or wrong about that, that's the consequence of St. Cyr. And St. Cyr, as I just read you, certainly believed they were talking about a lot of people. So your – this argument seems to me is directed at the wrong place. Well, just clear me up one thing. I'd like to back up. Two aliens, exact same crime. One travels abroad. The other does not. The one that doesn't travel is deported. The one that does travel is not deportable. What is your best argument that there is not an equal protections violation when they're both exactly similar in all respects except one went home to his homeland and came back? Because one, Your Honor, is subject to grounds for exclusion. That's the one who traveled and tried to come back. That's constitutional law, not statutory law. Well, St. Francis is the only case you have, Your Honor. And there was a direct statutory analog in the grounds for deportation and the grounds for removal. All the other cases that you've considered, they didn't have that analog, and the court held that that was sufficient for equal protection. The two classes of aliens are not similarly situated. If you do not have that analog, you are not similarly situated. That's all that Komarenko held. And the thrust of the decision, the rationale of the decision, is not limited to the particular crime involved. And it's not based on whether you traveled or not. It looks to the statutory language. If you have it, then you're similarly situated. If you don't have that statutory counterpart, you're not similarly situated. And that's it. I mean, the Misa case, if I have the right one, is the one that did suggest there was something slightly special about aggravated felonies. And then it looked at the drug trafficking. And the language is not exactly the same. And the coverage isn't exactly the same. They both deal with drug trafficking, but in somewhat different ways. And they said, well, good enough. It's good enough. So the question is, why isn't the overlap between the – let's take LaDesma and the murder, because it's even clearer, between the murder in LaDesma and the crime of moral turpitude at the board, or at least in that direction. One direction is 100 percent pretty much, right? But the key, Your Honor, is still you have to look at the statutory language, not what the crime was. And that's all that the board decisions say, and that's all the court's case has said. So it means that the language is good enough because they're both about drugs. They both had – there were references. But what kind of sense does that make in basic equal protection theory? I mean, I understand we're in a little world of its own here. But we have to be grounded in equal protection theory. And if you were just doing an ordinary equal protection case, what would you ever say such a thing? That the problem isn't whether a certain individual is being treated differently on an irrational – or a certain group, the group being the people who traveled and the people who didn't. We're not going to worry about that. We're going to worry about the statutory language. Is that – is that equal protection law in general? It is in Komarenko. Although, as I say, it's a different problem because it's not – you don't have this 100 percent in one direction. Well, as to that, I mean, it's still the statutory language. And I think the difference is, Your Honor, and, Judge Cowen, I wanted to ask you – answer your question. I'm glad an arithmetic came up. But the difference is still you still have to look at whether – it's not what the nature of your crime was. We make this point in our briefs. Section 212C waives grounds of exclusion, grounds of inadmissibility. It doesn't waive offenses. So you have to look at what the statutory grounds are. You have to, for better or for worse, go back to the statute. Okay. But that's why, to me, the question I asked you before becomes extremely important, the one to which you said you don't know the answer. Because if the consequences of admissibility at the border are not ground-specific, and I don't think they are, they're offense-specific, then that's what ought to matter. In other words, if somebody is at the border and they are admitted, they are determined to be inadmissible on some ground applicable at the border, and they get 212C relief, right? At that point, as I understand it, their protection is offense-specific, not ground-specific. You can't then turn around and deport them for the same thing on a different ground, can you? You can't. If they have a waiver of inadmissibility for, say, committing a crime that's a crime involving moral turpitude, then they enter. Right. I don't think it matters very much to this court that the court needs – to the analysis this court makes in this case, the fact that you cannot then turn around and deport that person. They have protection. There's no case one way or the other whether you can deport them after they're admitted, is there? I mean, I've seen nothing in the literature that – we say that they could be admitted, but is there any – there's nothing res judicata about them being admitted. Can they be deported after they're admitted in the face of that offense? For the same reason. For the very same offense? For the same offense but a different ground. In other words, you're trying to distinguish offenses and grounds, and I want to know whether that operates. I think, Your Honor, I think the answer is no, but that's because their crime, whatever it was, their offense would have been forgiven. Exactly. It would have been forgiven. That's exactly right. They're immunized. In other words, they're immunized. For the life of me, I don't see why that's particularly applicable here. Because that's what creates the equal protection problem. They're now being immunized for their crime, not for their ground, and other people who are – who have never left aren't. Well, they've been immunized for conduct-based immunization. In other words, not grounds-based immunization. No, it would be a grounds-based – well, it would be a waiver, and I don't think it matters very much whether the waiver granted at the border was – Or the conduct is waived. It would be a grounds-based.  We are saying you did something. Because you did something, you are now inadmissible for that under a provision of the Immigration Act. We forgive that. We let you in. It's still ultimately statute-based. We ask the Court to deny these petitions for review because the result urged by the petitioners would sever forever any link between relief under this statute and the statute itself. Thank you very much. Thank you very much. It's a useful argument and an interesting case. Mr. Nightingale, we'll give you a couple minutes. There is case law to support you can't be re-deported once you're admissible. It's an old, old case law from the board, a matter of Rathapur, which is 16 INN Decision 470 from 1978. It said that if you are deportable for something and you leave the – you're deported and then you come back with a waiver and you get your residency, you're not automatically re-deportable. Otherwise, there would be no point in giving you – Well, yes, but that's not quite the question. The question is are you then deportable on a different ground? Right. But it is a different ground because we know that deportation and invisibility don't match what the board said. I thought they did match in the case of Francis in the early cases. Right. But that didn't matter for – it didn't matter for the reasoning. This case is not in the exact question of doesn't matter if the grounds match. But in the old days, you weren't admissible if you were deportable and you would just be deported as soon as you were admitted, and they did away with that rule. But on back to the main point, in unpublished cases, 212C was granted to sexual abuse of a minor and crime of violence cases. The board was routinely granting that. These individuals, these petitioners here, all are in those categories that are clearly inadmissible. So there's a clear violation. Did you have a look at the briefs in St. Cyr to see what representations were made to the court at that time about the reach of the problem? Well, the St. Cyr was a drug question. I know it was, but as I was reading before, there is a representation in the opinion that we're talking about a broad range, and I'm wondering if somebody told them that or they just got it for themselves. They had – well, I don't know what the brief said on that. But they cited in the footnotes, you know, earlier decisions talking about the likelihood of grants, and they cited the actual AGFEL definition. Also, the deportability grounds say after admission. You're deportable if you have a conviction after admission. So those people who are admitted with a waiver are admitted and they're not deportable after admission. That's also why, as a practical matter, those people aren't deportable anymore. I think that also explains why that doesn't work. But if this grounds-specific thing were true, I would think they would be deportable if they met a different ground, and I don't think that's the way the world's operating. I agree with you. It's conviction-specific, not grounds-specific. And as a practical matter, they don't turn around and charge them deportability on a different ground. How does the matter of a Zurich case fit into this problem? Well, Azerin is a separate issue that came out of Gabrielsi that says if you're also admissible, a matter of Rainford originally was the case on this, that you can readjust your status in immigration proceedings to waive the deportability, and then you get a waiver of that inadmissibility, and you're no longer deportable or inadmissible. So Azerin sort of carves out an exception, if you will, but a lot of people, including these petitioners, aren't eligible under Azerin. They don't have a way to readjust their status. They can only get, if anything, the 212C alone. But it's odd because when people readjust their status, they readjust to the status these people already have. They start over. Right. They get their residency anew. You can readjust if you're an LPR to being an LPR again? Correct. And in matter of Rainford, the board said that is okay, and you start over, and your prior deportability is waived because you adjusted. And the case I cited at the beginning in Rafferpore was a predecessor at Rainford that was based on Rafferpore, that principle that you start over and you're not deportable anymore. So that also goes to that same point. Thank you very much. Thank you. I hope it's more useful. And we are now going to go case by case to Abebe, Dang, and Ledesma in that order. Your Honor, I'm also addressing the residual, the extra issue in Abebe, for which I believe we agreed on two minutes aside. I'll be with you. Yeah. Okay. I'm sorry. Go ahead. I'm just waiting for the clock to be properly set. No, we'll go into 10 minutes. I'm sorry. There's a residual issue on Abebe that we had agreed on, but I think two minutes Okay. I'm confused about the order, the time order. Are we doing 10, 10 and 10 after this? Dang, then Ledesma. You said Ledesma. What about Abebe? He goes now. Yes. Right. But is it 10 minutes each? Is that what we said? Yes. Five. Five for this one, 10 for the other two? It was five, Your Honor. Five for this one and 10 for the other two. Okay. Okay. Go ahead. All right. Go ahead. So the only other issue with Abebe is the question of whether the Board was correct that the withholding of deportation was waived. Mr. Abebe was pro se throughout his representation. And in his notice of appeal, he indicated that one of his reasons for the appeal was that the judge erred in the withholding of deportation adjudication. And the judge had denied withholding, finding that his offense was a particularly serious crime, which is a bar to withholding. Now, you claim he applied the wrong legal standard. Well, our position is that since the Board never addressed that, the correct resolution is for the case to go back to the Board to address in the first instance whether or not the judge adjudicated that particular serious crime question correctly. The Board mistakenly thought it had been waived by Mr. Abebe, even though it was raised in his notice of appeal. But did the transcript show that the – that it was considered at the time of the – that it was heard? Oh, the immigration judge heard it, certainly. But the Board hasn't addressed it. The Board didn't – this is not a case where the Board merely summary affirmed the judge, and therefore, this Court reviews the judge. The Court reviews the Board here. The Board didn't address the particularly serious crime or the withholding issue, even though Mr. Abebe, unrepresented, had put it in the notice of appeal. So the – we believe that Lada, the case decided in Petitioner's brief, clearly say – the pro se Petitioner here didn't waive the withholding question, even though the Board refused to review it. We think that was the Board's error in not reviewing that question of particularly serious crime. So all you're asking for is a remand on the grounds that it was adequately  Well, we're asking for a remand to say, Board, you were wrong not to address this. You have to address this in the first instance, and then we can review its illegal question. But the Board mistakenly thought that Mr. Abebe hadn't raised it at all. Inartful though he was, this Court's case law indicates that on pro se appellants, an inartful raising still preserves it, and there's no reason the Board could not have looked at that. The judge clearly laid out what the issue was, particularly serious crime. The Board could easily have looked. That was the majority of actually the judge's decision. The Board could easily have looked at that and decided whether the judge was correct. Instead, they said, this is waived because it wasn't raised, and that was just wrong. Was there a brief filed at all? There was a brief, yes. The brief was on the 212C question. But the notice of appeal had both. And the notice of appeal had a clear sentence, the judge was wrong on the withholding, and there's no reason the Board could not have easily have looked at that. And this Court's decisions have said, putting it in the notice of appeal puts the Board on notice, that's sufficient. And that's, therefore, a remand just to have that addressed as the appropriate thing. Thank you very much. Very briefly, Your Honors. The Petitioner did raise the issue in his notice of appeal, but then he didn't brief it. So we have a situation where the issue was exhausted for purposes of this Court's case law. There's no doubt about that. And we were mistaken in our brief to make an exhaustion argument. But, and my colleague used the word waiver, the Petitioner didn't brief the issue before the Board. So the question is, what obligation did the Board really have to imagine what arguments the Petitioner might have wanted to make? Well, at least it has an obligation not to misstate the record and say that he didn't raise it when he did raise it. They could maybe have said, but he didn't explain himself well enough, and so we're not going to say anything. But that's not what they said. So for that reason, don't we at least have to remit? Well, I think that the Board said, and I won't argue with the Court on this. I mean, the Board said the Petitioner raises no appellate challenge. It's kind of like this Court getting an issue raised in a petition for review and then no brief raised on that, filed on that issue. The Court routinely holds that that's a waiver of the issue. I think waiver is appropriate here. I think the Petitioner did waive the issue. I don't think the Board is obliged, even under this Court's case law, to imagine arguments and then answer them. So I don't think in these circumstances a remand, even under Venchera, is required. But his notice of appeal to the BIA clearly alleges to me that the judge erred in denying withholding and removal. There's an interesting allusion by the Petitioner in his description of that issue, which Your Honor has picked up on. He said the immigration judge erred in his discretion. That's what the notice of appeal actually said. And that is a confession that the issue is not subject to judicial review at this level. In his description of that quote in his primary brief, the words in his discretion were omitted, and that's rather telling. That's an issue that this Court ordinarily cannot look at. Thank you very much. Thank you. Breyer. Yes, the Petitioner uses the phrase in his discretion. But withholding is only a legal matter. It's not discretionary. It's inartful. But it doesn't affect this – it doesn't implicate this Court's jurisdiction over the issue, because withholding is inherently legal. And there's actually clear case law that – But the particularly serious crime isn't. Say again? But the particularly serious crime isn't. Well, this Court's case law clearly says it can review the particularly serious crime issue. I can't pronounce the name of the case. Up to a point. Yeah. Up to a point. As to whether the – Okay, thanks. All right. The case of Abebe v. Gonzales is submitted, finally.
judges: D.W. Nelson, Cowen , Berzon